# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| KINGFISHERS L.P., MIKE BLITZER, and GUY SHANON | ) ) ) | |
| Plaintiffs | ) ) | |
| v. | ) ) | C.A. No. 2024-0344-SG |
| FINESSE US, INC., | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Date Submitted: October 23, 2024
Date Decided: October 30, 2024

Benjamin P. Chapple, John T. Miraglia, REED SMITH LLP, Wilmington, Delaware, *Attorneys for Plaintiffs Kingfishers L.P., Mike Blitzer, and Guy Shanon.*

Sean M. Brennecke, Aimee M. Czachorowski, LEWIS BRISBOIS BISGAARD & SMITH, LLP, Wilmington, Delaware; Albert J. Carroll, Samuel E. Bashman, MORRIS JAMES LLP, Wilmington, Delaware; OF COUNSEL: Elisabeth A. Moriarty, Steven A. Stein, Eric M. Sefton, GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP, Los Angeles, California, *Attorneys for Defendant Finesse US, Inc.*

**GLASSCOCK, Vice Chancellor**

This matter is before me on a Motion to Dismiss. The allegations are factually simple. Plaintiff Kingfishers L.P. ("Kingfishers"), and its assignees, also Plaintiffs, invested in a start-up, Finesse US, Inc. ("Finesse" or the "Company"). Per the Complaint, the principals for these parties had a pre-investment meeting at which Kingfishers discussed investing $250,000 in Finesse, in return for which representatives of Finesse agreed that, upon a next-round sale of equity, Kingfishers would participate up to the value of its investment at a 70% discount to the rate paid by the next-round investors. Kingfishers would also be the beneficiary of a valuation cap which would limit the implied price to which their discount would be applied; such cap was to be "consistent with prior investment rounds," which Kingfishers interpreted as an agreement to a cap valuing Finesse at no more than $13 million.

Finesse prepared a contract governing this $250,000 investment using a form Simple Agreement for Future Equity ("SAFE"). The SAFE prepared by Finesse omitted any valuation cap and provided for a *discount rate* of 70%—that is, Finesse equity would be distributed to Kingfishers, based on its $250,000 investment, at the rate paid in the next round, multiplied by .7. In other words, Kingfishers expected to be provided equity at a 70% *discount*—paying 30% of the cost to the new investors; instead, the SAFE provided that the price would be 70% of that cost. Plaintiffs do not argue that any ambiguity lurks in the SAFE, and I find none—the agreement is clear: no valuation cap, and discount rate of 70%.

1

Despite the clear language of the SAFE, Plaintiffs aver they were surprised to be faced with Finesse's application of those terms, when the qualifying next equity round occurred. This appears to be because no representative of Kingfishers ever read the six-page SAFE; instead, Kingfishers relied on the representations made by Finesse's principal at the pre-investment meeting, and signed the SAFE without review.

Plaintiffs seek reformation of the SAFE to comply with the agreement allegedly reached at the pre-investment meeting. They rely on theories of mistake, fraud, and equitable fraud. Defendant seeks to dismiss under Rule 12(b)(6).

Upon review, I find that Plaintiffs have failed to state a claim for fraud or equitable fraud. My consideration of the matter under the doctrine of mistake is more problematic. A likely inference may be drawn that the parties discussed but did not agree on the amount of any valuation cap, and that there was confusion about whether equity would vest at a 70% *discount* to the price of the round, or at discount *rate* of 70%. This led to a misunderstanding on the part of Plaintiffs, which would have been dispelled had they read the SAFE. If so, reformation is not supported.

But the standard for the motion to dismiss does not allow me to draw a defendant-friendly inference where a reasonable inference in favor of Plaintiffs would support a claim. Plaintiffs have pled here that Finesse agreed to a 70% discount and a valuation cap at no more than $13 million. Assuming the truth of that

2

averment, I may infer that either Defendant made a mistake in drafting the SAFE in a way erroneously representing the agreement, or that Defendant, knowing that Plaintiffs would anticipate a SAFE which embodied their agreement, stood silent as Plaintiffs entered the non-compliant SAFE. This would state a case in equity for reformation.

I think it safe to say that reading contracts before signing is good practice. It is also safe to say that Plaintiffs have a difficult road to vindicate a claim to reformation. Nonetheless, I am compelled to deny the Motion to Dismiss in this regard, at the pleading stage. My reasoning follows.

# I. BACKGROUND[1]

*A. Factual Background*

## 1. The Parties

Plaintiff Kingfishers is a limited partnership organized under the laws of Delaware.[2] Kingfishers is an investment fund controlled by Kingstown Capital Management LP ("Kingstown").[3]

Plaintiff Mike Blitzer and Plaintiff Guy Shanon are co-Chief Investment Officers of Kingstown.[4]

Defendant Finesse is a corporation organized under the laws of Delaware, with its principal place of business located in Wilmington, Delaware.[5]

## 2. Discussions for the Simple Agreement for Future Equity

On September 8, 2021, Kingfishers' representatives and Finesse's Chief Executive Officer ("CEO"), Ramin Ahmari,[6] discussed the terms of a proposed SAFE during an in-person meeting held in Kingstown's office in New York City.[7] Ahmari, Blitzer, and Paula Sutter, a Kingstown advisor, attended this meeting.[8] A SAFE is an agreement that allows investors to invest money in early-stage startups

---

[1] This Memorandum Opinion only contains facts necessary to my analysis.
[2] Verified Compl. ¶ 10, Dkt. No. 1 ("Compl.").
[3] *Id.*
[4] *Id.* ¶ 11.
[5] *Id.* ¶ 12.
[6] *Id.* ¶ 13.
[7] *Id.* ¶¶ 3, 18–21.
[8] *Id.* ¶ 18.

in exchange for the right to receive stock in subsequent equity issuances.[9] The agreement is a "widely utilized" public template contract that was developed by Y Combinator, a startup accelerator.[10] The open terms that the parties needed to negotiate and agree upon for the template SAFE were the discount percentage and valuation cap (and the amount of investment).[11]

During the meeting, Ahmari represented to Blitzer and Sutter that Kingfishers "would receive a 70% discount on the to-be-issued shares of the Company's capital stock (in connection with a future Series A financing)."[12] In addition, Ahmari represented that the SAFE would contain a valuation cap consistent with prior investment rounds.[13] In these prior investment rounds, Finesse entered into at least four SAFEs with other investors, which all contained both discount and valuation cap provisions.[14] The prior valuation caps ranged from $5 million to $13 million, with the SAFE immediately preceding the one between Kingfishers and Finesse including a $13 million valuation cap.[15] Ahmari represented to Blitzer and Sutter

---

[9] *See id.* ¶¶ 1, 16, 25 n.1.

[10] *Id.* ¶ 25 n.1.

[11] *Id.* ¶ 25. Plaintiffs' Complaint does not mention the open term of the amount of investment. However, based on the executed SAFE, the parties needed to agree upon this term as well. *See* Compl.; Exs. A and B to Opening Br. in Supp. of Def. Finesse US. Inc.'s Mot. to Dismiss, Ex. A, Dkt. No. 16 ("SAFE").

[12] Compl. ¶ 19.

[13] *Id.*

[14] *Id.* ¶ 20.

[15] *Id.*

that the SAFE would be on terms that were the same as or substantially similar to those of prior investment rounds.[16]

Based on Finesse's representations, Kingfishers believed that both parties shared the same understanding: that the SAFE would contain both a 70% discount and a valuation cap consistent with prior rounds (i.e., no higher than $13 million).[17]

### 3. The Terms of the Executed SAFE

On September 10, 2021, Kingfishers entered the SAFE under which Kingfishers, in exchange for an initial investment of $250,000, received the right to certain shares of to-be-issued capital stock in Finesse.[18] Peter Ondishin, the Chief Financial Officer of Kingstown, signed the SAFE on behalf of Kingfishers.[19] Kingfishers was not represented by counsel in connection with this transaction.[20]

The SAFE was a total of six pages, including a signature page.[21] The terms of the executed SAFE included a "70% discount rate" rather than a "70% discount."[22] More specifically, the SAFE states "this Safe will automatically convert into the number of shares of Safe Preferred Stock equal to the Purchase Amount divided by the Discount Price."[23] "Discount Price" is defined as "the lowest price

---

[16] *Id.* ¶ 19.
[17] *Id.* ¶¶ 4, 21.
[18] *Id.* ¶ 1.
[19] SAFE 6.
[20] Compl. ¶ 21.
[21] *See* SAFE.
[22] Compl. ¶ 22.
[23] SAFE 1.

per share of the Standard Preferred Stock sold in the Equity Financing *multiplied by* the Discount Rate."[24] "Discount Rate" is 70%, as written on the first page of the SAFE.[25] Put simply, a 70% discount rate means that Plaintiffs would convert at 70% of the price per share in an equity issuance. On the other hand, a 70% discount means that Plaintiffs would convert at 30% of the price per share in an equity issuance.

In addition, the executed SAFE did not contain a valuation cap.[26] Besides the first page and signature page of the SAFE, each page of the SAFE includes a header that states "DISCOUNT ONLY."[27] Finesse removed the "DISCOUNT ONLY" header on the first page of the template SAFE.[28] Instead, the first page of the SAFE includes a header that states "FINESSE SAFE NOTE."[29]

When Mr. Ondishin signed the SAFE, Kingfishers represented that it "ha[d] such knowledge and experience in financial and business matters that [it was] . . . capable of evaluating the merits and risks of [the] investment."[30]

### 4. Assignment of the SAFE

On September 23, 2022, pursuant to a SAFE Assignment Agreement (the

---

[24] *Id.* at 2 (emphasis added).
[25] *Id.* at 1.
[26] Compl. ¶ 22.
[27] *See* SAFE; Compl. ¶¶ 25–27.
[28] Compl. ¶ 27.
[29] SAFE 1.
[30] *Id.* at 4.

"Assignment Agreement"), Kingfishers assigned its interests under the SAFE to Blitzer and Shanon[31] in exchange for $250,000.[32] Under the Assignment Agreement, Blitzer and Shanon each received 50% of Kingfishers' "right, title, and interest in and to the SAFE."[33]

The Assignment Agreement states that, upon execution of the Assignment Agreement, Kingfishers "shall have no rights of any kind in the SAFE or any securities issuable upon conversion of the SAFE."[34] It also states that "the documents referenced [i.e., the SAFE] set forth the entire agreement and understanding between the parties relating to the subject matter [i.e., the SAFE] and supersedes all prior or contemporaneous disclosures, discussions, understandings and agreements, whether oral or written, between them."[35]

### 5. Defendant Attempts to Enforce the SAFE in Connection with a Series A Transaction

On or about June 22, 2023, Finesse's outside counsel informed Plaintiffs that the SAFE would be automatically converted into shares of preferred stock in connection with the Company's Series A financing (the "Series A Transaction").[36] The SAFE was to be converted into 20,862 shares of Series A-6 Preferred Stock, at

---

[31] Compl. ¶ 11.
[32] Exs. A and B to Opening Br. in Supp. of Def. Finesse US. Inc.'s Mot. to Dismiss, Ex. B at 1, Dkt. No. 16 ("Assignment").
[33] Assignment 1; Compl. ¶ 11.
[34] Assignment 1 ¶ 3.
[35] *Id.* at 2 ¶ 10.
[36] Compl. ¶ 28.

a conversion price of $11.9830 per share.[37]  This is consistent with the 70% discount rate and no valuation cap applied to the SAFE.[38]  Despite stating that the conversion would occur automatically, Finesse still requested Plaintiffs to sign off on the conversion no later than 5:00 PM on June 23, 2023.[39]  Plaintiffs refused to sign off, and the Series A Transaction closed on June 26, 2023.[40]

Under the plain language of the SAFE with no valuation cap and a discount *rate* of 70%, upon conversion, Blitzer and Shanon would have received 20,862 shares of Series A-6 Preferred Stock, at a conversion price of $11.9830 per share.[41] In contrast, if a 70% discount was applied, the SAFE would have converted into 48,679 shares, at a conversion price of $5.1356 per share.[42]  Alternatively, if a valuation cap of $13 million, which is the valuation cap of the immediately prior SAFE,[43] was applied, the SAFE would have converted into 149,476 shares, at a conversion price of $1.6725 per share.[44]

*B. Procedural Background*

Plaintiffs filed a Complaint on April 2, 2024.[45]  Plaintiffs assert three

---

[37] *Id.* ¶ 29.
[38] *Id.*
[39] *Id.* ¶ 30.
[40] *Id.* ¶ 31.
[41] *Id.* ¶¶ 6, 34.
[42] *Id.* ¶¶ 32, 34.
[43] *Id.* ¶ 20.
[44] *Id.* ¶¶ 33, 34.
[45] Compl.

9

causes of action.[46]  For Count I, Plaintiffs assert a cause of action for reformation based on mistake, and request the Court to reform the SAFE to provide for a 70% discount and include a valuation cap no higher than $13 million.[47]  In the alternative, for Count II, Plaintiffs assert a cause of action for reformation based on fraudulent inducement, and request the Court to reform the SAFE to include a valuation cap no higher than $13 million.[48]  In the alternative, for Count III, Plaintiffs assert a cause of action for equitable fraud, and request the Court to reform the SAFE to include a valuation cap no higher than $13 million.[49]

On June 7, 2024, Defendant filed a Motion to Dismiss.[50]  The parties completed briefing on August 16, 2024.[51]  I heard oral argument on the Motion to Dismiss on October 23, 2024, and I consider the matter submitted as of that date.[52]

## II. ANALYSIS

Defendant has moved to dismiss the Complaint under Court of Chancery Rule

---

[46] *Id.* ¶¶ 37–61.
[47] *Id.* ¶¶ 37–46.
[48] *Id.* ¶¶ 47–54.
[49] *Id.* ¶¶ 55–61.
[50] Def. Finesse US. Inc.'s Mot. to Dismiss, Dkt. No. 16.
[51] Opening Br. in Supp. of Def. Finesse US. Inc.'s Mot. to Dismiss, Dkt. No. 16 ("Def. OB"); Pl.'s Answering Br. in Opp'n to Def.'s Mot. to Dismiss, Dkt. No. 21 ("Pls. AB"); Def. Finesse US, Inc.'s Reply Br. in Supp. of its Mot. to Dismiss, Dkt. No. 23 ("Def. RB").
[52] Mot. to Dismiss before Vice Chancellor Sam Glasscock, III on 10.23.24 re: Matter taken under advisement, Dkt. No. 26.

12(b)(6) for failure to state a claim.[53]  When considering a motion to dismiss under

Rule 12(b)(6), the Court turns to the well-settled, requisite standard:

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and (i[v]) dismissal is inappropriate unless the "plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[54]

I need not, however, "accept as true conclusory allegations 'without specific supporting factual allegations.'"[55]  In addition, I refer to certain documents that are incorporated by reference in the Complaint.[56]

As a threshold matter, Defendant contends that Plaintiff Kingfishers must be dismissed for lack of standing.[57]  Kingfishers is the assignor of the SAFE.[58] Plaintiffs Blitzer and Shanon are the assignees of the SAFE.[59]  Defendant argues that Kingfishers must be dismissed because it retains no rights or interest in the SAFE, post-assignment.[60]  Defendant further contends that the integration clause of the Assignment Agreement precludes the assignees from relief here.[61]  Plaintiffs

---

[53] *See* Def. OB.

[54] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002) (citations omitted).

[55] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) (citations omitted).

[56] *See Windsor I, LLC v. CWCapital Asset Mgmt. LLC*, 238 A.3d 863, 873 (Del. 2020) (quoting *Vanderbilt Income & Growth Assoc., LLC v. Arvida/JMB Managers, Inc.*, 691 A.2d 609, 613 (Del. 1996)).  I refer both to the SAFE and the Assignment Agreement, which are referenced in Plaintiff's Complaint. *See* Compl.

[57] Def. OB 9–10.

[58] Assignment 1.

[59] *Id.*

[60] Def. OB 9.

[61] *Id.* at 20.

contend the right to reformation, if it existed prior to the assignment, must reside somewhere.[62] I agree that I may defer this decision at this pleading stage, and do not consider it further in this Memorandum Opinion.

Defendant also argues that Counts I, II, and III must be dismissed for failure to state a claim pursuant to Rule 12(b)(6). I determine that, with plaintiff-friendly inferences, Plaintiffs have stated a claim for Count I for reformation based on mistake. But Plaintiffs have failed to state a claim for Count II for reformation based on fraudulent inducement and Count III for reformation based on equitable fraud. My analysis follows.

*A. Count I: Reformation – Mistake*

Plaintiffs assert that Kingfishers and Defendant held a shared understanding that the SAFE would contain a 70% discount and a valuation cap consistent with prior investment rounds at the time the SAFE was executed, but the executed SAFE materially departs from this understanding because of mistake.[63] Plaintiffs request reformation of the SAFE to include a 70% discount (rather than 70% discount rate) and a valuation cap consistent with prior investment rounds (no higher than $13 million).[64] Defendant argues that Plaintiffs have not stated a claim for reformation

---

[62] Pls. AB 18–20.
[63] Compl. ¶¶ 37–45.
[64] *Id.* ¶ 46.

based on mistake because they have not alleged facts sufficient to meet their heightened pleading burden.[65] I disagree.

Both mutual mistake and unilateral mistake allow for reformation.[66] For mutual mistake, "the plaintiff must show that both parties were mistaken as to a material portion of the written agreement."[67] For unilateral mistake, the plaintiff "must show that it was mistaken and that the other party knew of the mistake but remained silent."[68] For both types of mistake, the plaintiff must plead the existence of a "specific prior understanding that differed materially from the written agreement."[69] "Under Court of Chancery Rule 9(b), '[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.'"[70] Accordingly, to survive the Motion to Dismiss, Plaintiffs must plead with particularity that: (i) Plaintiffs thought the executed SAFE included a valuation cap of no more than $13 million and a discount of 70%; (ii) Finesse was also similarly mistaken, or knew of Plaintiffs' mistake and remained silent; and (iii) Finesse and Kingfishers specifically agreed that the SAFE would include a valuation cap of no more than $13 million and a discount of 70%, materially different from their written contract, the SAFE.

---

[65] Def. OB 10.
[66] *Cerberus Intern., Ltd. v. Apollo Mgmt., L.P.*, 794 A.2d 1141, 1151 (Del. 2002).
[67] *Id.*
[68] *Id.*
[69] *Id.* at 1152.
[70] *Ogus v. SportTechie, Inc.*, 2020 WL 502996, at *4 (Del. Ch. Jan. 31, 2020) (citation omitted).

Defendant argues that Plaintiffs' Complaint lacks sufficiently particularized allegations that support a reasonable inference of the parties' specific prior understanding.[71] I disagree. In their Complaint, Plaintiffs allege that prior to the execution of the SAFE, "Kingfishers and Defendant reached a specific prior understanding that the SAFE would contain a 70% discount and a valuation cap consistent with prior investment rounds (*i.e.*, no higher than $13 million)."[72] To support this allegation of a specific prior understanding, Plaintiffs rely on sufficiently particularized factual allegations. First, Plaintiffs plead that on September 8, 2021, there was an in-person meeting at Kingstown's New York City office to discuss the terms of the SAFE, which was attended by Blitzer, Sutter, and Defendant's CEO.[73] Second, Plaintiffs aver that Defendant's CEO made repeated representations that Kingfishers would receive a 70% discount, and the SAFE would include a valuation cap consistent with prior investments.[74] Third, Plaintiffs plead that the prior four SAFEs that Defendant entered with other investors included valuation caps between $5 million to $13 million.[75] At the motion to dismiss stage,

---

[71] Def. OB 10–15.
[72] Compl. ¶ 38.
[73] *Id.* ¶ 18.
[74] *Id.* ¶ 19.
[75] *Id.* ¶ 20. Defendant argues that Plaintiffs fail to adequately allege that the parties had a "complete mutual understanding" because Plaintiffs fail to state where the valuation cap would fall in the $5 million to $13 million range of previous investments. Def. RB 9–10. Even so, I must make the plaintiff-friendly inference that, based on Plaintiffs' allegations, the parties had a specific prior understanding that the SAFE would include a valuation cap, and that the valuation cap would be similar to the prior investments.

14

I must make plaintiff-friendly inferences. Assuming this meeting took place and these representations were made, I may reasonably infer that the parties had a specific prior understanding that the SAFE would include a 70% discount and a valuation cap consistent with prior investments (i.e., no higher than $13 million). This is materially different than the executed SAFE that included a 70% discount rate (rather than a 70% discount) and no valuation cap.

Based on these facts, I may also reasonably infer that either Defendant made a mistake in drafting the SAFE in a way that does not reflect the specific prior understanding, or that Defendant, knowing that Plaintiffs would anticipate a SAFE which embodied their agreement, stood silent as Plaintiffs entered the non-compliant SAFE. In addition, Plaintiffs have sufficiently pled that they thought the executed SAFE included a valuation cap of no higher than $13 million and a 70% discount.[76] As such, Plaintiffs have alleged sufficiently particularized facts to meet their pleading burden for requesting reformation based on mistake.

Of course, other inferences could be drawn from the facts, which would not support reformation. Plaintiffs' pleading is sufficient to overcome the hurdle of a motion to dismiss, nonetheless.

Defendant also relies on *Parke Bancorp Inc. v. 659 Chestnut LLC*, where the Delaware Supreme Court held that a reformation claim is barred when the failure to

---

[76] Compl. ¶ 2.

15

read an agreement amounts to "bad faith."[77]  Defendant points to Plaintiffs' failure to do what a reasonable actor would have: read the brief text of the SAFE before execution.[78]  However, Defendant does not argue that Kingfishers' failure to discover the mistake amounted to *bad faith,* or point to anything in the Complaint that indicates there is bad faith (as opposed to, say, gross negligence or foolish disregard of self-interest) on the part of Plaintiffs.  As such, a reformation claim is not barred.

Accordingly, Defendant's motion to dismiss Count I is denied.

*B. Counts II and III: Reformation – Fraudulent Inducement/Equitable Fraud*

Plaintiffs assert, in the alternative, a fraudulent inducement claim against Defendant alleging that Defendant represented to Kingfishers that the SAFE would include a valuation cap similar to prior investments to induce reliance.[79]  Plaintiffs also assert, again in the alternative, an equitable fraud claim against Defendant alleging that Defendant negligently represented to Kingfishers that the SAFE would include a valuation cap during the parties' meeting.[80]  Plaintiffs request reformation of the SAFE to include a valuation cap no higher than $13 million.[81]  Defendant argues that Plaintiffs have failed to state claim for fraudulent inducement, or in the

---

[77] Def. OB 11–12; *Parke Bancorp Inc. v. 659 Chestnut LLC*, 217 A.3d 701, 711 (Del. 2019).
[78] Def. OB 11.
[79] Compl. ¶¶ 20, 47–54.
[80] *Id.* ¶¶ 55–61.
[81] *Id.* ¶¶ 54, 61.

alternative, equitable fraud,[82] because the plain text of the SAFE contradicts the existence of a valuation cap term, and thus, Plaintiffs cannot have reasonably relied on Defendant's alleged representations.[83] I agree.

"To state a claim for fraud in the inducement, a plaintiff must allege: '(i) a false representation, (ii) the defendant's knowledge of or belief in its falsity or the defendant's reckless indifference to its truth, (iii) the defendant's intention to induce action based on the representation, (iv) reasonable reliance by the plaintiff on the representation, and (v) causally related damages.'"[84] As this is a claim of fraud, Court of Chancery Rule 9(b) applies here as well.[85]

Plaintiffs have failed to plead a reasonably conceivable claim for fraudulent inducement because the Complaint does not have particularized factual allegations from which the Court may reasonably infer reasonable reliance. First, the SAFE does not include a valuation cap, and Plaintiffs acknowledge this in their

---

[82] The parties disagree as to whether the doctrine of equitable fraud—typically reliant on a special equitable relationship—can apply here given that these parties were simply contractual counterparties in an arm's length negotiation. Def. OB 17–19; Pls. AB 16–17; Def. RB 14–15. I need not reach the question, as reasonable reliance is an element of both common-law and equitable fraud, precluding vindication under either theory. *See Williams v. White Oak Builders, Inc.*, 2006 WL 1668348, at *7 (Del. Ch. June 6, 2006) (quoting *H–M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 144 (Del. Ch. 2003)), aff'd, 913 A.2d 571 (Del. 2006) ("A claim of negligent misrepresentation, or equitable fraud, requires proof of all of the elements of common law fraud except 'that plaintiff need not demonstrate that the misstatement or omission was made knowingly or recklessly.'").

[83] Def. OB 15, 17; *see* Def. RB 15.

[84] *Ogus*, 2020 WL 502996, at *4 (citations omitted).

[85] *Id.*

17

Complaint.[86]  Second, the SAFE includes a header stating, "DISCOUNT ONLY," on all the pages except the first page (where the header was changed to "FINESSE SAFE NOTE")[87] and the signature page.[88]  "[I]t is unreasonable to rely on oral representations when they are expressly contradicted by the parties' written agreement."[89]  There is no reasonable reliance on representations "when one had the opportunity to read the contract and by doing so could have discovered the misrepresentation."[90]  While I make the plaintiff-friendly inference that Defendant represented to Kingfishers that the SAFE would include a valuation cap, the executed SAFE is unambiguous—there is no valuation cap.  Plaintiffs had an opportunity to read the SAFE and discover that there is no valuation cap term.  Thus, regardless of the alleged representations made to Kingfishers during the September 8, 2021 meeting, Plaintiffs have failed to adequately plead reasonable reliance on those representations.[91]  Accordingly, I find both fraudulent inducement and equitable fraud precluded, as reasonable reliance is an element of both common law and equitable fraud.[92]

---

[86] Compl. ¶ 22; *see* SAFE.
[87] SAFE 1.
[88] *Id.* at 1–6; Compl. ¶ 27.
[89] *Ogus*, 2020 WL 502996, at *7 (citations omitted).
[90] *Carrow v. Arnold*, 2006 WL 3289582, at *11 (Del. Ch. Oct. 31, 2006) (citation omitted).
[91] Looked at another way, if Defendant was attempting to defraud Kingfishers, it was wildly incompetent in that attempt (by furnishing an unambiguous written agreement disclosing the fraud) and supremely lucky in its choice of victim (fortuitously, marks willing to bind themselves, blindly).
[92] *See Williams*, 2006 WL 1668348, at *7.

Plaintiffs argue that the request for reformation of the SAFE to include a valuation cap does not seek to override any plain and unambiguous terms of the SAFE because the header "DISCOUNT ONLY" is not a term of the SAFE.[93] In other words, Plaintiffs argue that there is no term in the SAFE that states that there is no valuation cap. I do not find this argument persuasive. It does not matter that the header "DISCOUNT ONLY" is not a term of the SAFE. By reading the SAFE, Plaintiffs could have discovered that the written agreement does not include a valuation cap term through either the "DISCOUNT ONLY" header or *simply failing to find such a term*. The lack of a valuation cap term is clear and unambiguous in the SAFE, with or without the "DISCOUNT ONLY" header. Thus, Plaintiffs have failed to adequately plead reasonable reliance because Plaintiffs would have discovered that there is no valuation cap, contrary to what Defendant had allegedly represented, by simply reading the six-page SAFE.

Accordingly, Defendant's motion to dismiss Counts II and III is granted.[94]

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss the Complaint is

---

[93] Pl. AB 21.

[94] Defendant also argues that "[t]o the extent Shanon asserts a claim for [Count II] fraudulent inducement or [Count III] equitable fraud other than as an assignee of Kingfishers, those claims fail because . . . Shanon does not allege that Finesse ever made any misrepresentations or omissions to him." Def. OB 21. Because Defendant's motion to dismiss Counts II and III is granted, I decline to address this argument.

19

GRANTED with respect to Count II (reformation based on fraudulent inducement) and Count III (reformation based on equitable fraud) of the Complaint. With respect to Count I, Defendant's Motion to Dismiss is DENIED. The parties should submit a form of order consistent with this Memorandum Opinion.